**ORIGINAL**

ELLIOT ENOKI
Acting United States Attorney
District of Hawaii

THOMAS J. BRADY #4472
Chief, Criminal Division

MARSHALL H. SILVERBERG # 5111
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: marshall.silverberg@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 19 2017

at ___ o'clock and 57 min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO. 17-00004 LEK |
| ) | |
| Plaintiff, ) | MEMORANDUM OF |
| ) | PLEA AGREEMENT |
| ) | |
| vs. ) | Date:   April 19, 2017 |
| ) | Time:   2:00 p.m. |
| WALLACE J. SILVA, JR., ) | Judge:  Hon. Leslie E. Kobayashi |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, WALLACE J. SILVA ("the defendant"),

and his attorney, Richard S. Kawana, Esq., have agreed upon the following:

1.      The defendant acknowledges that he has been charged in the

Indictment with the following offenses:

> (a) Robbing First Hawaiian Bank on December 2, 2016, in
>     violation of Title 18, United States Code, Section 2113(a)
>     (Count 1);
>
> (b) Robbing Bank of Hawaii on December 3, 2016, in violation
>     of Title 18, United States Code, Section 2113(a) (Count 2);
>
> (c) Robbing First Hawaiian Bank on December 6, 2016, in
>     violation of Title 18, United States Code, Section 2113(a)
>     (Count 3); and
>
> (d) Robbing Bank of Hawaii on December 27, 2016, in
>     violation of Title 18, United States Code, Section 2113(a)
>     (Count 4).

2.      The defendant has read the charges against him contained in the

Indictment, and those charges have been fully explained to him by his attorney.

3.      The defendant fully understands the nature and elements of the

crimes with which he has been charged in the Indictment.

4.      The defendant will enter voluntary pleas of guilty to all four

Counts of the Indictment.   In exchange, the government will not seek to charge the

defendant for six other bank robberies he committed in December 2016, and the six uncharged robberies will not be included in his advisory guideline offense level.   However, the defendant agrees to pay restitution for all 10 bank robberies. The government agrees to recommend concurrent sentencing for all pending federal criminal cases against the defendant.

5.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.   The defendant enters these pleas because he is in fact guilty of robbing the four banks identified in the four counts of the indictment.

7.   The defendant understands that the maximum possible statutory penalties for each count are:

       (a) a term of imprisonment of 20 years;

       (b) a fine of not more than $250,000;

       (c) a term of supervised release of not more than three years;

       (d) a special assessment of $100; and

       (e) restitution to the 10 victim banks (as described below).

8.   Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which Defendant is pleading guilty:

## **Count 1: First Hawaiian Bank on December 2, 2016**

(a)   On December 2, 2016, at about 2:30-40 p.m., the First Hawaiian Bank branch located at 1580 Kapiolani Blvd., Honolulu, Hawaii, was robbed by the defendant.   The female teller informed police that a male standing in line approached her teller station and placed a note in front of her.   The note said: "$5,000 I have a weapon."   The teller then stated that she withdrew $500 in twenty-dollar bills from her assigned teller drawer.   The defendant replied that "I only want 100's," then he said, "I don't want to take it out!" Because of those statements, the teller then withdrew another $500 in hundreds, and the defendant then said "I know how it works."   The defendant then left the bank with the money.

(b)   The teller later informed the Honolulu Police Department (HPD) that she complied with the defendant's demands because she believed that he was armed and when he said to her "I don't want to take it out" she looked at all the customers and felt in fear for her safety and that of the customers.

(c)   There are bank surveillance photographs consistent with the description of the defendant provided by the teller.   They show a

4

man, stocky, with a white mustache, wearing a floral print aloha shirt, at her teller station, giving the teller a document, which the teller has stated was the demand note.

(d)   The bank surveillance photos were shown on the news. U.S. Probation Officer J.C. recognized the defendant as the robber because, at that time, J.C. was supervising the defendant for four bank robberies the defendant had committed and been convicted of in 2007.

(e)   Subsequently, on December 27, 2016, and as described in more detail below, after being apprehended for committing his tenth bank robbery in December 2016, the defendant was given his Miranda rights, which he waived, and he gave a statement in which he admitted committing this bank robbery.

**Count 2: Bank of Hawaii on December 3, 2016**

(f)   On December 3, 2016, at about 10:15 a.m., the Bank of Hawaii branch located at 101 N. King Street, Honolulu, Hawaii, was robbed by the defendant.   The male teller described the male suspect as local in his 50s, short in height, wearing a dark colored jacket. The defendant gave the teller a note which said, "Give me $5,000

now." He said, "I have a weapon, I give two minutes." The male

teller gave the defendant $5,510 in cash because of the threat.

(g) In his post-Miranda statement on December 27, 2016, the

defendant admitted to committing this bank robbery. In addition,

further evidence that the defendant committed this robbery is

described below with respect to Count 4.

**Count 3: First Hawaiian Bank on December 6, 2016**

(h) On December 6, 2016, at about 3:00 p.m., the First

Hawaiian Bank branch located at 2181 Kalakaua Street, Honolulu,

Hawaii, was robbed by the defendant. According to the female teller,

a male entered the bank, came to her teller booth, and handed her a

note. The teller did not get a good look at the note but remembered

the words "give" and 10,000. While the teller was trying to read the

note, the defendant became aggressive and verbally demanded money

by saying "just give me all your money." The teller gave the

defendant $790 in assorted bills. The defendant wanted more money

and got more aggressive and louder, threatening the teller by saying

"just give it all to me or else I'll knock you out!"

(i)   Because the defendant continued to demand more money, the teller gave him another $200, in marked $10 bills.   The defendant demanded more money but the teller did not have any more so the defendant left the bank.   The teller has informed HPD that she felt threatened by the robber and that is why she gave him the money. She also provided a physical description which fits the defendant.

(j) The defendant left the demand note at the bank.   It was written on the back of an ABC receipt.   It stated "give me 10,000 now."   HPD went to the ABC store which prepared the receipt. They obtained surveillance footage of the customer who generated the receipt (about 10 minutes before the bank robbery).   U.S. Probation Officer J.C. then identified the defendant from the surveillance photos at the ABC store.

(k)   In his post-Miranda statement on December 27, 2016, the defendant admitted to committing this bank robbery.

**Count 4: Bank of Hawaii on December 27, 2016**

(l)   On December 27, 2016, at about 9:45 a.m., the Bank of Hawaii branch located at 101 North King Street was robbed by the defendant.   At that time, the defendant walked into the bank.   A

teller recognized him as the same person who had robbed the same branch of Bank of Hawaii on December 3, 2016 (see Count 2 description above).

(m) After entering the bank, the defendant approached a teller. The defendant was wearing a baseball cap, white short sleeve shirt with buttons and a black frame eye glasses. The defendant showed a white note with the word "robbery" written on it and verbally stated to the teller, "give me all money, $100 bills." The defendant also had a brown paper bag that he placed on the counter. The teller gave the defendant $3,718 and the defendant put the money in the paper bag. The defendant then took the bag with the money and left the bank, walking on King Street.

(n) The branch manager followed the defendant out of the bank and observed him get into a taxi (license plate RDU 694). The branch manager memorized the license number and called it into the HPD. An All-Points-Bulletin (APB) was put on the air by HPD for the taxi. A patrol car heard the APB and saw the taxi. The patrol car pulled over the taxi. The officer drew his firearm and approached the taxi. He ordered the driver to turn off the engine and show his hands.

8

The officer saw a person in the back seat moving around.   He ordered him out of the van.   The person, later identified as the defendant, resisted arrest.   The officer eventually obtained control of him and handcuffed him.   A Deputy U.S. Marshal soon arrived and arrested the defendant on an outstanding warrant for violating his term of supervised release for the bank robberies he had been convicted of in 2007.

(o)   The crime scene was processed by HPD, which found the brown paper bag in the back seat of the taxi.   Inside were the $3,718 which the defendant had obtained by robbing the BOH.

(p)   In his post-Miranda statement on December 27, 2016, the defendant admitted to committing this bank robbery.

## All counts

(q)   At the time that all four bank robberies were committed by the defendant, Bank of Hawaii and First Hawaiian Bank were insured by the Federal Deposit Insurance Corporation and constituted "banks" as that term is used in Title 18, United States Code, Section 2113(a) and defined in Title 18, United States Code, Section 2113(f).   All four banks robbed were and are located in the District of Hawaii.

9

(r)   With respect to all four bank robberies, the defendant admits that he took money from the person and presence of another, while that money was in the care and custody of that person and that such taking was by force, violence, or intimidation.

9.   Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this agreement will not undermine the statutory purposes of sentencing.

10.   Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

(a)   The parties agree that the facts set forth above in paragraph eight are incorporated herein by reference.   The defendant also agrees that robbing a bank is a "crime of violence" under U.S.S.G. § 4B1.2(a)(1) and (a)(2).

(b)    In addition to paying restitution for the four bank robberies charged in the Indictment, the defendant agrees to pay restitution for the six uncharged bank robberies for which he has admitted committing.   More specifically, the defendant agrees to pay restitution for the following ten bank robberies, with each robbery having occurred on the date, bank, location, and with the amount robbed, as indicated in the table below:

| Date | Bank robbed | Branch robbed | Robbery amount |
|------|-------------|---------------|----------------|
| 12/02/16 | First Hawaiian Bank | Kapiolani Blvd. | $1,000 |
| 12/03/16 | Bank of Hawaii | North King St. | $5,510 |
| 12/03/16 | American Savings Bank | Keeaumoku St. | $2,400 |
| 12/06/16 | First Hawaiian Bank | Kalakaua Ave. | $990 |
| 12/09/16 | Bank of Hawaii | Waialae Ave. | $1,480 |
| 12/12/16 | American Savings Bank | Bishop St. | $1,142 |
| 12/15/16 | American Savings Bank | Piikoi St. | $11,969 |
| 12/19/16 | Bank of Hawaii | S. King St. | $1,490 |
| 12/19/16 | American Savings Bank | Liliha St. | $4,770 |
| 12/27/16 | Bank of Hawaii | N. King St. | $3,718 |
| | | Total | $34,469 |

11

(c)     Based upon information presently known to the

government, the government agrees not to object to a finding by the

probation officer in the presentence report or to a finding by the court

that the defendant has clearly demonstrated acceptance of

responsibility for the offense, entitling him to a two-level reduction

for acceptance of responsibility pursuant to Sentencing Guideline §

3E1.1(a).

(d)     The government further agrees, in accordance with

U.S.S.G. § 3E1.1(b), that if the defendant's offense level is level 16 or

higher, he should be entitled to a third-level reduction for "super

acceptance of responsibility" because of his decision to plead guilty

well in advance of the trial date.   Notwithstanding the foregoing, the

government reserves the right to withdraw from these concessions if it

receives information subsequent to the date of this agreement that the

defendant has not clearly accepted responsibility for his guilt.

11.   The parties agree that notwithstanding the parties' agreement

herein, the Court is not bound by any stipulation entered into by the parties but

may, with the aid of the presentence report, determine the facts relevant to

sentencing.

12. Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties agree there are no facts in dispute for the purpose of the sentencing of the defendant in connection with this matter.

13. The defendant is aware that he has the right to appeal his conviction under Title 28, United States Code, Section 1291 and Federal Rule of Appellate Procedure 4(b). He also is aware that he has a right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). The defendant knowingly and intentionally waives the right to appeal his conviction and sentence so long as the sentence is within the statutory maximum.

14. The defendant also waives his right to challenge his conviction and sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge based on a claim of ineffective assistance of counsel.

15. The defendant understands that pursuant to Guideline 6B1.1(c), this agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report. The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the

actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

16.   The defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a)   If the defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

(b)   If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

14

(c)   If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

(d)   At a trial, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

(e)   At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

17.   The defendant understands that by pleading guilty, he is voluntarily, knowingly, and intelligently waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

18.     The defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce the defendant to plead guilty.

19.     Should the Court refuse to accept this agreement, it is null and void and neither party shall be bound thereto.

20.     The defendant further agrees to be bound by this Memorandum of Plea Agreement and not to seek a withdrawal of the guilty plea that he intends to enter or to withdraw from this Memorandum of Plea Agreement.

21.     If, after signing this Memorandum of Plea Agreement, the defendant nonetheless decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw from the Plea Agreement and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Plea Agreement or that he makes while pleading guilty as set forth in this agreement could be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Plea Agreement or during the course of pleading guilty when the guilty plea is later

16

withdrawn.   The _only_ exception to the principles set forth in this paragraph is

where the defendant fully complies with this Agreement but the Court nonetheless

rejects it.   In that one situation, the government could not use the defendant's

statements in its case-in-chief but could use it in cross-examining the defendant or

in a rebuttal case.

22.   The defendant understands that the prosecution will apprise the

Court and the United States Probation Office of the nature, scope and extent of the

defendant's conduct regarding the charges against him, related matters, and any

matters in aggravation or mitigation relevant to the issues for sentencing.

DATED:   Honolulu, Hawaii, ___April 19, 2017___.

AGREED:

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii


THOMAS J. BRADY
Chief, Criminal Division


MARSHALL H. SILVERBERG
Assistant U.S. Attorney


WALLACE J. SILVA
Defendant


RICHARD S. KAWANA
Attorney for Defendant
WALLACE J. SILVA

17